IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DEBRA HUGHES,**            CASE NO. 3:20 CV 124

    Plaintiff,

    v.            JUDGE JAMES R. KNEPP II

**TOLEDO AREA REGIONAL TRANSIT AUTHORITY,**

    Defendant.            **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

On January 20, 2020, Plaintiff Debra Hughes filed a complaint against Toledo Area Regional Transit Authority ("TARTA") (Doc. 1). Plaintiff brings six claims for relief: (1) racial discrimination under 42 U.S.C. 1981; (2) disability discrimination and harassment under Ohio Revised Code § 4112.02(A) made actionable pursuant to Ohio Revised Code § 4112.99 as amended on the basis of disability; (3) racial discrimination under Ohio Revised Code § 4112.02; (4) intentional infliction of emotional distress; (5) negligent hiring, retention, and supervision; and (6) retaliation under Ohio Revised Code § 4112.02(I). This court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Currently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 28-1), to which Plaintiff responded (Doc. 34) and Defendant replied (Doc. 35). For the reasons stated below, Defendant's motion is granted.

### BACKGROUND

This case arises out of Defendant's termination of Plaintiff's employment. Plaintiff is an African-American woman. (Plaintiff's Depo., Doc. 31, at 5). While at work, a malfunctioning lift

fell on Plaintiff's foot. *Id*. at 17. As a result, Plaintiff injured both hamstrings and her right foot. (Mason Depo., Doc. 30, at 9, 14). She was cleared to return to work on "light duty." (Plaintiff's Depo., Doc. 31, at 28). After working in the office for some time, Plaintiff was assigned to the garage area to audit parts and clean bins. *Id*. at 29. She was unhappy with this assignment and repeatedly asked for a different duty; Defendant attempted to accommodate the requests each time. (Mason Depo., Doc. 30, at 16). With each new task, Plaintiff complained the assignment involved too much walking, was too dirty, or involved having to put her hands in water. *Id*. at 15. To assist Plaintiff, Defendant provided accommodations such as an apron to keep her clothes clean, gloves to keep water and dirt off her hands, or a cart on which to place parts to reduce her amount of walking. *Id.* at 17. Plaintiff subsequently obtained a note from her doctor requiring her to have a desk job. (Plaintiff's Depo., Doc. 31, at 32). Plaintiff claims this agitated her supervisor, Geneva Mason, who responded by pushing a "dusty" and "filthy" table to the corner of the wall for Plaintiff to sit. *Id*. at 33.

While working at this desk, Plaintiff testified Defendant's employees harassed and mistreated her by checking in on her approximately "sixteen times" throughout the day. *Id*. at 32. Defendant claims this was standard practice and done to ensure Plaintiff's needs were being met. (Mason Depo., Doc. 30, at 17). Additionally, Defendant believed this was a prudent practice due to the frequency of Plaintiff's complaints. *Id.* at 18. However, Plaintiff says two other employees assigned to "light duty" did not receive similar treatment. (Plaintiff's Depo., Doc. 31, at 72). Plaintiff further alleges she was required to ask for permission from her supervisor to use the restroom or enter the break room. (EEOC Claim, Doc. 28-4, at 1). Plaintiff contends this supervision was "unwelcome harassment." *Id*. Plaintiff filed a complaint regarding this alleged

harassment with the EEOC in 2016. *Id*. After investigation, the EEOC was unable to substantiate the allegations and dismissed the claim. (EEOC Dismissal, Doc. 28-5).

During her employment with Defendant, Plaintiff incurred numerous attendance policy infractions. (Mason Depo., Doc. 30, at 23). Under the collective bargaining agreement between Defendant and the Amalgamated Transit Union ("ATU"), the accrual of fifteen attendance infractions in a twelve-month period is grounds for termination. (ATU Collective Bargaining Agreement, Doc. 28-6, at 3). On July 23, 2017, Plaintiff incurred her fifteenth infraction during the relevant period and was given a notice of termination. (Notice of Termination, Doc. 28-2). Plaintiff disputed the number of infractions, resulting in a union grievance heard by binding arbitration. (Arbitration Decision, Doc. 28-8). The arbitrator found in favor of Defendant and dismissed the grievance. *Id*. at 9

Plaintiff alleges her subsequent termination was improper, discriminatory, and retaliatory. *See generally* Doc. 1. Plaintiff further claims the alleged harassment and mistreatment subjected her to "great mental and emotional stress, anxiety, humiliation and embarrassment." *Id*. at 9.

## STANDARD OF REVIEW

Summary judgment is appropriate when the evidence shows there is "no genuine dispute as to material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must consider all underlying facts "in the light most favorable to the party opposing the motion." *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 457 U.S. 574, 587 (1986). The Court cannot weigh the evidence or determine the truth of the disputed matter and must determine only whether there is a genuine issue for trial. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). The moving party bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, this burden may be discharged if the moving party can show "there is an absence of evidence to support the nonmoving party's case." *Id*. Once this is shown, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id*. at 324

## DISCUSSION

Plaintiff brings claims of racial discrimination, disability discrimination and harassment, intentional infliction of emotional distress, negligent hiring, retention, and supervision, and retaliation. Defendant moves for summary judgment on each claim. Each will be discussed in turn.

<u>Race Discrimination under 42 U.S.C. § 1981</u>

Plaintiff alleges Defendant discriminated against her based on race in violation of 42 U.S.C. § 1981. To prove such a claim, Plaintiff must show "(1) [she] belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) [Defendant] intended to discriminate against [her] on the basis of race; and (3) [Defendant's] discriminatory conduct abridged a right enumerated in § 1981(a)." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). Defendant argues Plaintiff cannot show Defendant's intent to discriminate based on race. (Doc. 28-1, at 4). When bringing a § 1981 claim, Plaintiff "bears the burden of showing that race was a 'but-for' cause of [her] injury." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020).

Plaintiff argues "[t]here was no reason for her termination and mistreatment other than race." (Doc. 34, at 4). To support this, Plaintiff asserts she was assessed an incorrect attendance point total because she never received an "eleven point letter". *Id.* Because of this incorrect point total, Plaintiff claims, she should not have been fired. (Plaintiff's Depo., Doc. 31, at 48-49). Plaintiff additionally alleges her disparate treatment in comparison to Caucasian employees shows

4

race was the but-for cause of her termination. According to Plaintiff, Dean Coleman (a Caucasian employee with light duty assignments) was not subjected to the same supervision as Plaintiff. *Id*. at 32. Additionally, Coleman was given office work instead of assignments requiring her to be on her feet and was not subjected to dirty work stations. *Id*. at 34.

Defendant points to the arbitration decision to argue that Plaintiff's claim of race being the only reason for mistreatment is not warranted. That decision found because Plaintiff had habitual attendance policy infractions throughout her employment:

> [I]t is reasonable to believe grievant also *knew* she got an eleventh infraction and written warning in March and another infraction in April. Whether she did or not, she created the confusion that led to placing the suspension on hold . . . and it hardly would be just to allow her to profit from such confusion by crediting her with reasonable detrimental reliance on a clearly unreasonable belief that any possible contractually proper suspension was permanently off the table.

(Arbitration Decision, Doc. 28-8, at 8) (emphasis in original). The arbitrator's decision, Defendant argues, did not suggest Defendant intended to discriminate against Plaintiff based on race. Instead, the arbitrator concluded Defendant had a proper, nondiscriminatory justification for acting. *See generally* Doc. 28-8. Thus, the second element under *Amini*, an intent to discriminate based on race, is not satisfied. *Amini*, 440 F.3d at 358. As set forth below, this Court is bound by the determination of the arbitrator and is not permitted to relitigate this issue.

Collateral estoppel bars the relitigation of an issue "regardless of the nature of the legal claims." *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 700 F. App'x 484, 490 (6th Cir. 2017). To determine the effect of a prior judgment, federal courts must give "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Young v. Twp. Of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)).

Under Ohio law, issue preclusion applies when an issue (1) was actually and directly litigated in a prior action; (2) was decided by a court of competent jurisdiction; and (3) when the party against whom issue preclusion is asserted was a party in privity with a party to a prior action. *State ex rel. Jefferson v. Russo*, 159 Ohio St. 3d 280, 281 (2020) (internal citation and quotation omitted). An arbitration award will be given the same preclusive effect as a court judgment for the matters it decided. *City of Cleveland v. Ass'n of Cleveland Fire Fighters, Loc. 93*, 20 Ohio App.3d 249, 254, 485 N.E.2d 792, 798 (1984).

Both Plaintiff and Defendant were parties to the prior arbitration, during which Plaintiff alleged a misapplication of attendance infractions. *See generally* Arbitration Decision, Doc. 28-8. The arbitrator denied the grievance, finding Plaintiff lacked "a coherent factual basis for such a challenge." *Id*. at 9. Therefore, the decision of the binding arbitration bars Plaintiff from relitigating the validity of the attendance-based justification for her termination.

Thus, even viewing the facts in a light most favorable to Plaintiff, Plaintiff cannot support her claim that race was the but-for cause of her termination. Therefore, summary judgment must be granted as to this claim.

Race Discrimination under Ohio Revised Code § 4112.02[1]

Plaintiff next alleges Defendant discriminated against her based on race in violation of Ohio Revised Code § 4112.02. When a plaintiff does not provide direct evidence of racial

---

1. In both state and federal discrimination claims based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *See George v. Youngstown State Univ.*, 966 F.3d 446 (6th Cir. 2020) (applying the *McDonnell Douglas* framework to a federal law discrimination claim); *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) (applying the *McDonnell Douglas* framework to a 42 U.S.C. § 1981 discrimination claim); *Wheat v. Fifth Third Bank*, 785 F.3d 230 (6th Cir. 2015) (applying the *McDonnell Douglas* framework to a state law discrimination claim). Because of this, for the reasons stated below, any federal race discrimination claim arising out of Title VII also fails.

6

discrimination, this Court applies the *McDonnell Douglas* burden-shifting analysis. *Nelson v. Ball Corp.*, 656 F. App'x 131 (6th Cir. 2016). Under this framework, Plaintiff must first establish a prima facie case of discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). To meet this burden, Plaintiff must show: "(1) [she] was a member of a protected class; (2) [she] suffered an adverse employment action; (3) [she] was qualified for the position; and (4) [she] was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Under this statute, unlike the above § 1981 claim, Plaintiff must only show that Defendant's actions would lead one to reasonably "infer, if such actions remain unexplained, that it is more likely than not that such actions were based on discriminatory criterion" such as race. *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009). This is a less stringent standard than the "but for" standard applied in § 1981 claims. *See Comcast Corp., supra*.

If Plaintiff can establish a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Burdine*, 450 U.S. at 252-53 (citing *McDonnell Douglas*, 411 U.S. at 802). If Defendant articulates such a reason, the burden shifts back to Plaintiff to demonstrate the proffered reason was a mere pretext for discrimination. *Id*. at 253.

*Prima Facie Case*

The only disputed element of Plaintiff's prima facie case is whether a similarly situated employee of a different race received better treatment than Plaintiff. Historically, to be considered "similarly situated," the individuals with whom Plaintiff seeks to compare her treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish

7

their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). However, later Sixth Circuit cases have emphasized that this inquiry should not be "exceedingly narrow" and individuals are considered similarly situated "if they are similar (though not identical) in all relevant respects." *Lynch v. ITT Educ. Servs., Inc.*, 571 F. App'x 440, 444 (6th Cir. 2014) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)). Therefore, "the appropriate test is to look at [the *Mitchell*] factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 396 (6th Cir. 1998) (internal citations omitted).

As stated previously, Plaintiff identifies Dean Coleman, a white female coworker, as a similarly situated employee. (Doc. 34, at 7). Plaintiff provides reasons why she believes Ms. Coleman was treated more favorably but does not address Defendant's argument that Ms. Coleman is not a similarly situated employee. Even if this argument had been addressed, it cannot be supported by the evidence provided. Plaintiff admitted in her deposition she is unaware of Ms. Coleman's circumstances that could show they are similarly situated:

> **Q. Dean Coleman was on light duty before you, correct?**
>
> A. Didn't know that. She might have been. She went on light duty quite a lot. You know, she would be in the office, and then she'd drive, and then she'd be in the office.
>
> **Q. Okay. And you don't know what her restrictions were, what she was able to do; is that right?**
>
> A. She hurt her foot some kind of way, she hurt --
>
> **Q. But you don't know for sure what her medical restrictions were; is that correct?**
>
> A. No, I don't know.

(Plaintiff's Depo., Doc. 31, at 34-35). Plaintiff further admitted she and Coleman did not share the same supervisor. Plaintiff indicated her direct supervisor was John Elston. *Id*. at 37. When asked about Coleman, Plaintiff indicated Coleman's direct supervisor was "Probably Geneva [Mason]. I'm pretty sure it was Geneva." *Id*. at 36. Because Plaintiff and Coleman had different direct supervisors and Plaintiff lacks evidence as to whether Coleman even had a similar injury or restrictions, Plaintiff has not demonstrated they are similarly situated in all relevant respects.

Thus, Plaintiff's prima facie case fails. She lacks evidence to show she was treated less favorably than similarly situated employees, because she lacks evidence that Ms. Coleman is similarly situated in all relevant respects. Plaintiff said in her testimony that she and Coleman did not work under the same supervisor. Additionally, Plaintiff has not offered any evidence showing an absence of mitigating or aggravating circumstances. Therefore, Plaintiff has failed to create a genuine issue of material fact as to her prima facie case.

*Legitimate, Non-Discriminatory Reason*

Even assuming, *arguendo*, Plaintiff could make out a prima facie case, her claim still fails because Defendant provided a legitimate, nondiscriminatory justification that Plaintiff has not shown is pretextual.

Defendant asserts it terminated Plaintiff's employment because she violated the terms of the collective bargaining agreement. As discussed previously, this issue was already settled in arbitration. Therefore, collateral estoppel bars relitigating "the legitimacy of the accumulation of attendance points" in this case. (Doc. 35, at 6).

Even if collateral estoppel does not apply, the Sixth Circuit has held an employer's reliance on a neutral attendance policy satisfies its burden to provide a nondiscriminatory justification. *See Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 322 (6th Cir. 2012). During her

9

deposition, Plaintiff was asked if she was terminated for accumulating attendance points and whether this was argued at arbitration; she responded affirmatively to both questions. (Plaintiff's Depo., Doc. 31, at 44). Thus, because collateral estoppel bars relitigation of this issue, or because Plaintiff had not created a genuine issue of material fact regarding the attendance violations, Defendant has satisfied its burden to provide a nondiscriminatory justification for its actions.

*Pretext*

Because Defendant offered a legitimate nondiscriminatory justification, the burden shifts back to Plaintiff to show that justification was pretextual. Plaintiff may establish the proffered reason was a mere pretext by showing (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain Defendant's actions. *Jackson v. Genesee Cty. Rd. Comm'n*, 999 F.3d 333, 350-51 (6th Cir. 2021). A proffered reason will not be considered a pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

Plaintiff lacks support for her claim that the justification was pretextual. Much like in the prior analysis, Plaintiff argues her disputed point total leaves Defendant's proffered reason for termination with no basis in fact and was an insufficient motivation for termination. However, the arbitrator determined the stated reason did have a basis in fact and was sufficient to explain Defendant's actions. Additionally, the arbitrator and Defendant agree the attendance infraction was the only reason for Plaintiff's termination. In fact, as evidenced, Defendant sought to avoid terminating Plaintiff entirely. As Geneva Mason testified, "[TARTA] really didn't want to terminate [Plaintiff]" because Plaintiff "was a good employee, [and Mason] like[d] [Plaintiff]." (Mason Depo., Doc. 30, at 30-31). The Last Chance Agreement confirms this. The text of the

10

agreement stated ". . . in an effort to extend good faith in our most senior operator, TARTA offers Ms. Hughes the benefit of the doubt." (Last Chance Agreement, Doc. 28-7). Instead of taking advantage of Defendant's offer, Plaintiff refused to sign the agreement and retain her position. (Mason Depo., Doc. 30, at 31).

Plaintiff has failed to establish the necessary elements to satisfy a claim. Therefore, Defendant is entitled to summary judgment as to the race discrimination claim under Ohio Revised Code § 4112.02.

Disability Discrimination and Harassment

Plaintiff next alleges she was subjected to disability discrimination and harassment. (Doc. 1, at 5). To establish a prima facie case of disability discrimination under Ohio law, Plaintiff must show: (1) she was disabled; (2) an adverse action was taken by the employer, at least in part, because Plaintiff was disabled; and (3) Plaintiff, though disabled, can safely and substantially perform the essential functions of the job in question. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 938 (6th Cir. 2000).

The federal Americans with Disabilities Act ("ADA") is similar to Ohio disability discrimination law. As such, the Court may use the federal Act as guidance in interpreting Ohio law. *Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 431 (6th Cir. 2012).

A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities…; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." Ohio Rev. Code § 4112.01(A)(13). "Major life activities" include, in relevant part, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A).

11

In this case, Plaintiff has failed to provide sufficient evidence to support the claim she was terminated because of a disability. Plaintiff's cited disability is a "pushed disc" with two pinched nerves requiring weeks of rehabilitation. (Plaintiff's Depo., Doc. 31, at 23). Additionally, Plaintiff points out she still uses a motorized shopping cart when at stores and is required by her doctor to sit more than stand as evidence of disability. *Id*. at 22; Mason Depo., Doc. 30, at 16.

Even assuming *arguendo* Plaintiff's cited injuries are a "disability," she has offered no evidence to support the claim that she was terminated because of such disability. Again, Plaintiff made an admission during her deposition contrary to her claim. When asked whether she believed she was terminated because of her injuries, Plaintiff said she "[did not] believe so." *Id*. at 68.

Therefore, Plaintiff has failed to create a genuine issue of material fact regarding her disability discrimination claim and Defendant is entitled to summary judgment.

Intentional Infliction of Emotional Distress

Plaintiff next asserts Defendant's actions were "calculated to cause and did cause Plaintiff to suffer serious emotional distress." (Doc. 1, at 8). Further, she contends Defendant's conduct went beyond "all possible bounds of decency" that no reasonable person could be expected to endure. *Id*.

Under Ohio law, to establish a case for intentional infliction of emotional distress, Plaintiff must prove: (1) Defendant intended to cause the plaintiff serious emotional distress; (2) Defendant's conduct was extreme and outrageous; and (3) Defendant's conduct was the proximate cause of Plaintiff's serious emotional distress. *Lopez v. Am. Fam. Ins. Co.*, 618 F. App'x 794, 804 (6th Cir. 2015).

Conduct is considered extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." *Liadis v. Sears, Roebuck & Co.*, 47 F. App'x 295, 299 (6th Cir. 2002) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 375 (1983) (abrogated on other grounds by *Welling v. Weinfeld*, 113 Ohio St. 3d 464 (2007))). This does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager*, 6 Ohio St. 3d at 375.

Serious emotional distress is "severe and debilitating" such that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983). In bringing a claim of severe and debilitating emotional injury, Plaintiff must present some guarantee of genuineness to prevent the Court from granting summary judgment in favor of Defendant. *Taylor v. Streicher*, 465 F. App'x 414, 423 (6th Cir. 2012). This may be offered in the form of expert testimony or testimony from lay witnesses familiar with the plaintiff who can describe "any marked changes in the emotional or habitual makeup that they discern in the plaintiff[.]" *Paugh*, 6 Ohio St. 3d at 80.

Defendant contends it is entitled to summary judgment because Plaintiff has provided no evidence to suggest its conduct was extreme and outrageous nor that Plaintiff suffered the debilitating form of emotional distress required to maintain a claim. (Doc. 28-1, at 17). To support her argument, Plaintiff says the treatment she received from Defendant caused her to see a psychiatrist because she "almost had a nervous breakdown." (Plaintiff's Depo., Doc. 31, at 43). Plaintiff also says, as of the date of her deposition, she is still seeking treatment for her distress and remains prescribed to two different medications (Lexapro and Xanax). *Id*. at 94.

Plaintiff bases her claim on being "checked on" repeatedly and required to obtain permission to use the restroom, conclusively stating this conduct was extreme and outrageous. (Doc. 1, at 8). In defense, Defendant argues the supervision of Plaintiff was standard practice and

13

done to ensure Plaintiff's numerous requests were being met and that she felt comfortable. (Mason Depo., Doc. 30, at 18). Additionally, Defendant contends it only required Plaintiff to obtain permission to use the restroom because Plaintiff was discovered to have spent large amounts of time in the break room and restroom while on the clock. *Id*. at 19.

Plaintiff has also failed to provide a guarantee of genuineness in support of her claim. Plaintiff did not provide expert evidence or lay testimony showing her distress was "severe and debilitating." Plaintiff additionally did not provide evidence suggesting a reasonable person would find the cited conduct to be harmful or abusive. Plaintiff merely argues she "certainly felt [Defendant's conduct] was offensive and abusive" and that "[a]ny adult would find such constant observation and the requirement to use the restroom as offensive." (Doc. 34, at 12). This is insufficient. *See Oman v. Advance Auto Parts, Inc.*, 2003 WL 22722952, at *2 (N.D. Ohio) (holding "mere conclusory statements that a defendant's conduct was extreme or outrageous do not raise a genuine issue of material fact.").

Plaintiff has since filed a Motion for Leave to File Instanter Additional Documents in Opposition to Defendant's Motion for Summary Judgment. (Doc. 36). The proposed additional documents contain, in relevant part, medical documents pertaining to Plaintiff's ongoing mental and physical health conditions. *Id*. In response, Defendant argues the motion should be denied due to Plaintiff's failure to file timely. (Doc. 37, at 2). All additional documents provided by Plaintiff are dated in 2016 and 2017. *See generally* Doc. 36-1. Plaintiff has not indicated these documents were unavailable to her at the time her opposition was filed. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (denying plaintiff's motion for leave to amend based on undue delay because time for discovery had concluded and a summary judgment motion had been filed). As such,

because of Plaintiff's failure to timely file these documents, Plaintiff's Motion for Leave is denied. Thus, only evidence supplied initially will be considered.

To bring a successful claim, a recitation of the facts "to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980). Applying this standard and viewing the facts in a light most favorable to Plaintiff, the Court is unable to find a genuine issue of material fact as to this claim. The Sixth Circuit has previously held the heightened scrutiny of an employee was not "so outrageous and intolerable as to offend generally accepted standards of morality and decency." *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 555 (6th Cir. 2002) (abrogated on other grounds by *Portnoy v. Nat'l Credit Sys., Inc.*, 837 F. App'x 364 (6th Cir. 2020)). Additionally, even the denial of restroom breaks has not met this threshold. While this may be considered a "petty oppression," it is not considered "atrocious and utterly intolerable in a civilized community." *Worthy v. Materials Processing, Inc.*, 433 F. App'x 374, 377 (6th Cir. 2011).

Therefore, Plaintiff's claim that Defendant's institution of heightened supervision and requiring permission to use the restroom was extreme and outrageous is not supported. Thus, there is no genuine issue of material fact regarding Plaintiff's claim of intentional infliction of emotional distress and Defendant is entitled to summary judgment.

Negligent Hiring, Retention, and Supervision

Plaintiff next alleges Defendant was negligent in hiring and retaining Plaintiff's supervisor. Under Ohio law, the elements of such a claim are: (1) an employment relationship; (2) incompetence of the employee; (3) the employer's actual or constructive knowledge of the employee's incompetence; (4) an act or omission of the employee causing Plaintiff's injuries; and

(5) the employer's negligence in hiring or retaining the employee proximately caused Plaintiff's injuries. *Risner v. ShopKo Stores, Inc.*, 325 F. Supp. 2d 825, 829 (N.D. Ohio 2004).

Here, Plaintiff alleges Geneva Mason was incompetent due to her harassment, failure to accommodate, discriminatory behavior, and intentional infliction of emotional distress. (Doc. 34, at 13). As explained above, the Court is unable to find a genuine issue of material fact to support the claims that Mason engaged in harassment, discriminatory behavior, or an intentional infliction of emotional distress. Thus, any claims of incompetency on these grounds cannot be supported.

Likewise, a negligent hiring, retention, and supervision claim based upon a failure to accommodate cannot be supported. To prove a failure to accommodate, Plaintiff must show: (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) Defendant knew or had reason to know about her disability; (4) she requested an accommodation; and (5) Defendant failed to provide the necessary accommodation. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 669 (6th Cir. 2020).

The first four factors are not in dispute. However, Plaintiff's claim fails because she fails to demonstrate the fifth prong. All evidence provided shows Defendant put forth reasonable effort to accommodate each of Plaintiff's requests. (Mason Depo., Doc. 30, at 15). Plaintiff testified her doctor provided her with a medical statement requiring her to sit down and not stand up when she worked. (Plaintiff's Depo., Doc. 31, at 32). Mason provided Plaintiff with a chair in which to sit and instructed her to roll around the chair wheels if she needed to move. *Id*. at 33-34. Despite the accommodations, Plaintiff argues in her brief that they were provided with hostility. (Doc. 34, at 11). However, hostility is not a relevant element in establishing a prima facie case of a failure to accommodate.

For reasons discussed in this section and above, there is insufficient evidence to support the claim that Defendant's actions were incompetent. Because of this, the claim of negligent supervision cannot survive. Defendant is entitled to summary judgment as to this claim.

Retaliation

Finally, Plaintiff alleges Defendant retaliated against her for engaging in a protected activity. Under Ohio Revised Code § 4112.02(I), it is an unlawful discriminatory practice for an individual "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, or participated in any manner" in an investigation, proceeding, or hearing under § 4112. In order to establish a retaliation claim, Plaintiff must show: (1) she engaged in a protected activity; (2) Defendant was aware Plaintiff had engaged in that activity; (3) Defendant took an adverse employment action against her; and (4) that there is a causal link between the protected activity and adverse action." *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Like state and federal discrimination claims, state and federal retaliation claims apply the same *McDonnell Douglas* framework. *Barrow v. City of Cleveland*, 773 F. App'x 254, 261 (6th Cir. 2019).

The first three prongs are not in dispute. Plaintiff contends she can also establish the fourth prong – causation. She relies on temporal proximity to her EEOC claim to do so. Previous cases establishing the causation prong of a prima facie case based on the proximity of time between actions have all been short periods of time, usually less than six months. *Nguyen v. City of Cleveland*, 229 F.3d 559, 566-67 (6th Cir. 2000) (citing *Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997)). A period of more than four months is too long to support an inference of retaliation. *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986). Finally, temporal proximity without

17

other compelling evidence will not support an inference of retaliatory discrimination. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).

Plaintiff initiated her EEOC claim on December 7, 2016. Plaintiff was not terminated from her job until she accumulated 15 attendance infractions on July 17, 2017, over six months after she originally filed the EEOC claim. Her termination was also one month after her EEOC claim was dismissed entirely with no action taken against Defendant. (Arbitration Decision, Doc. 28-8, at 9). The time frame of over seven months between the protected activity (filing the EEOC claim) and the adverse action falls outside both the six-month general time period established in *Parnell* and the four-month limitation established in *Cooper*. Thus, an inference of retaliation cannot be supported.

To support her claim, Plaintiff must also plausibly allege the adverse action would not have been taken had she not engaged in a protected activity. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). Even when viewing the facts in a light most favorable to Plaintiff, Plaintiff has not shown a genuine issue of material fact to support this claim. Plaintiff relies on temporal proximity alone, which is insufficient to support an inference of retaliation.

Finally, Plaintiff's claim fails under the *McDonnell Douglas* framework. As analyzed in previous sections, even if Plaintiff established a prima facie case of retaliation, Defendant has offered a valid nondiscriminatory justification for the termination. For reasons discussed previously, Plaintiff has failed to show this justification was pretextual.

Therefore, Plaintiff has failed to establish a prima facie case of retaliation and has failed to meet the *McDonnell Douglas* framework. Thus, Defendant is entitled to summary judgment as to this claim.

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Plaintiff's Motion for Leave to File Instanter Additional Documents in Opposition to Defendant's Motion for Summary Judgment (Doc. 36) is DENIED; and

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 28) be, and the same hereby is, GRANTED.

s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE